UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

ST. JAMES INCORPORATED,　　　　　　　　　　　Case No. 07-48680
f/k/a ASC Incorporated,　　　　　　　　　　　　　Chapter 11
a Michigan corporation,　　　　　　　　　　　　　Judge Thomas J. Tucker

　　　　　Debtor-in-Possession.
_____/

ST. JAMES INCORPORATED,
f/k/a ASC Incorporated,

　　　　　Plaintiff,　　　　　　　　　　　　　Adv. No. 07-6329
　v.

CANANWILL, INC.,

　　　　　Defendant.
_____/

**OPINION REGARDING DEFENDANT'S SECURITY INTEREST IN
UNEARNED INSURANCE PREMIUMS**

　　In this preference case, the reorganized Chapter 11 Debtor, St. James, Inc. ("Debtor") seeks to avoid and recover pre-petition payments totaling $123,640.79 that it made to Cananwill, Inc. ("Cananwill"), under 11 U.S.C. §§ 547 and 550. The parties agreed to submit this case to the Court on stipulated facts and exhibits, and then filed briefs.

　　Cananwill financed the Debtor's purchase of several commercial insurance policies. Cananwill's loans enabled Debtor to pay, in advance, the annual premiums for some of the Debtor's insurance policies. This opinion addresses one of the issues in the case — namely, whether Cananwill had a perfected, pre-petition security interest in the Debtor's right to a refund

of any unearned premiums paid for the Debtor's insurance policies. The Court concludes that Cananwill did have such a security interest.

## I. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## II. Facts

The relevant facts are undisputed. The Court finds the facts stated in this opinion based on the parties' stipulations and stipulated exhibits.[1]

Cananwill provides insurance premium financing for commercial property and casualty insurance policies. Pre-petition, Debtor financed some of its annual insurance policies through Cananwill. Debtor used loans provided by Cananwill to pay in advance for one year of insurance coverage under the insurance policies. Because the Debtor paid in advance for a year of insurance coverage, Debtor would be entitled to a refund of part of the annual premium — the so-called unearned premium — if Debtor cancelled any of the insurance policies early.

Cananwill lent Debtor a total of $615,439.07 for Debtor's annual insurance premiums, and Debtor agreed to repay Cananwill with interest, in monthly installments. The parties made two separate contracts, each entitled "Commercial Insurance Premium Finance and Security Agreement ("Premium Finance Agreement").[2] Each of the Premium Finance Agreements gives

---

[1] Joint Final Pretrial Order (Docket # 18) at 3, and Exhibits 1-4 (Docket # 17).

[2] The two Premium Finance Agreements between Debtor and Cananwill include identical provisions, except for the amounts financed. The first Premium Finance Agreement (Account No. 01-49529676-02) provides that the amount financed by Cananwill was $82,445.07 and that Debtor would make 11 monthly payments of $7,854.93, starting on July 15, 2006. The second Premium Finance
(continued...)

2

Cananwill a security interest in the Debtor's right to any unearned premiums. Each agreement contains the following language:

> 2. **Insured assigns to CANANWILL as security for the total amount payable hereunder all sums payable to the Insured under the listed Policies, including, among other things, any gross unearned premiums** and any payment on account of loss which results in a reduction of unearned premium in accordance with the terms of said policies
>
> 3. **Insured** hereby irrevocably **appoints CANANWILL as its Attorney-in-Fact upon the occurrence of an Event of Default (defined below)** and, after proper notice has been mailed as required by law, **grants to CANANWILL authority to effect cancellation of policy(ies) in the Schedule of Policies ("Policies"), and to receive any unearned premiums or other amounts with respect to the Policies assigned as security herein**, and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to CANANWILL.
> . . .
>
> 7. An **Event of Default occurs when the insured does not pay any installment according to the terms of this Agreement or . . . fails to comply with any of the terms of the Agreement or . . . if any of the Policies are cancelled for any reason**. If any Event of Default occurs and after giving notice as required by law, all amounts due under the agreement become immediately due and payable and the Insured is liable for all amounts described herein, including any unpaid balance remaining after application of the unearned premiums.[3]

On May 2, 2007, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. During the 90 days before the bankruptcy filing, Debtor made transfers to Cananwill in

---

[2](...continued)
Agreement (Account No. 01-49709909-02) provides that the amount financed by Cananwill was $532,994 and that Debtor would make 11 monthly payments of $50,038, starting on February 1, 2007.

[3] Docket #17, Exhibits 1-2 (emphasis added).

3

the form of payments totaling $123,640.79 under the Premium Finance Agreements.[4]  None of the Debtor's insurance policies that Cananwill financed were cancelled before the Debtor filed bankruptcy.[5]  But the parties have stipulated that as of the bankruptcy filing date, the value of the unearned premiums financed by Cananwill was $396,010.48.  Debtor filed this adversary proceeding seeking to recover the pre-petition payments made to Cananwill, as avoidable preferences under 11 U.S.C. § 547, and now acts under authority of a confirmed Chapter 11 liquidation plan.[6]

### III.  Discussion

#### A.  Debtor's argument

In order to avoid a transfer as a preference under Bankruptcy Code § 547, the Debtor has the burden of proving each of the elements of avoidability under § 547(b), by a preponderance of the evidence.  *See* 11 U.S.C. § 547(g); *Shapiro v. Art Leather, Inc. (In re Connolly North America, LLC)*, 398 B.R. 564, 569 (Bankr. E.D. Mich. 2008).  Section 547(b) states the elements:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

---

[4]  This total is derived from Exhibits 3 and 4, and does not include a payment of $50,038.00 that Debtor made, in the form of a check that Debtor's bank paid on May 7, 2007, 5 days after Debtor filed its bankruptcy petition.  *See* Exhibit 3.

[5]  Nor does the record reveal whether any of the insurance policies were cancelled *after* the bankruptcy filing.

[6]  *See* Order Confirming . . . Plan, etc. (Docket # 1245 in Case No. 07-48680).

    (3) made while the debtor was insolvent;

    (4) made–

        (A) on or within 90 days before the date of the filing of the petition; or

        (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

    (5) that enables such creditor to receive more than such creditor would receive if-

        (A) the case were a case under chapter 7 of this title;

        (B) the transfer had not been made; and

        (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

There is no dispute that each of the transfers at issue meets the requirements of subsections (1), (2), (3), and (4) of § 547(b). Cananwill disputes element (5), and argues that the Debtor failed to meet his burden of proving this element.

One of the issues in dispute in this case, relevant to the parties' dispute under § 547(b)(5), is whether Cananwill had a perfected security interest in the Debtor's right to a refund of unearned insurance premiums, before Debtor filed its bankruptcy petition. Cananwill claims that it did, and that its security interest was a purchase-money security interest that was superior to the general all-asset liens held by the Debtor's lenders.

The Debtor argues that Cananwill's security interest in unearned premiums could not *attach* until there was an early cancellation of an insurance policy. This is so, Debtor says,

because the Debtor had no right to a refund of unearned premiums unless and until an insurance policy was cancelled early. Debtor argues that applicable Michigan law does not recognize a security interest in an insured's mere contingent or future right to unearned insurance premiums. In support of its argument, Debtor cites *Comerica Bank-Ann Arbor, N.A. v. Sutherland (In re Duke Roofing Co.)*, 47 B.R. 990 (E.D. Mich. 1985). Because the insurance policies financed by Cananwill were not cancelled before the Debtor's bankruptcy filing, Debtor argues, the Debtor's right to receive unearned premiums could only be property that the Debtor acquired post-petition.[7] Under 11 U.S.C. § 552(a), therefore, Debtor argues that any such right to unearned premiums was not subject to Cananwill's pre-petition security interest.[8]

The Court must reject Debtor's argument for the following reasons.

**B. Cananwill's security interest in unearned premiums attached and was perfected under Michigan law before the bankruptcy petition date, and before the start of the 90-day preference period.**

Premium finance agreements are commonly used in the insurance industry, and involve:

> an advance by the finance company to the insurance company or its agent of the premium due for the full term of the policy. This advance is then repaid by the insured to the finance company in

---

[7] As noted in footnote 5 above, the record in this case is silent as to whether any of the insurance policies were ever cancelled at all, post-petition, rather than simply expiring by their terms sometime after the Debtor's Chapter 11 filing. In that event, under Debtor's view, its right to unearned premiums never arose, pre- or post- petition, and Cananwill's security interest could never have attached in any event.

[8] Section 552(a) states the following general rule:

> (a) Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a).

6

> amortized monthly installments which includes an additional
> amount to cover financing charges. **The finance company is
> secured in making this advance by obtaining the right to cancel
> the policy and to receive the return premium due upon
> cancellation if timely repayments are not made.**

*Borg-Warner Credit Corp. v. RBS Indus., Inc.* (*In re RBS Indus., Inc.*), 67 B.R. 946, 951 (Bankr. D. Conn. 1986) (emphasis added) (citing *Baker & Co. v. Preferred Risk Mut. Ins. Co.*, 569 F.2d 1347, 1348 (5th Cir. 1978)). Under this type or arrangement, "the insured party is vested with the right to cancel the policies and receive the unearned premiums *at the time the policies are funded* by the financer." *Id.* (emphasis added).

In this case, the Debtor and Cananwill clearly made agreements like those described above. And they clearly intended to create a security interest in any unearned premiums.

### 1. Michigan common law and the *Duke Roofing* case

The parties agree that the Premium Finance Agreements in this case are governed by Michigan law.[9] Generally, Article 9 of the Uniform Commercial Code, as adopted in Michigan, sets forth the manner in which a creditor may acquire and perfect a security interest in personal property of the debtor. But a security interest in unearned insurance premiums is excluded from the coverage of Article 9, because it is an "interest or claim in or under any policy of insurance."

---

[9] Each Premium Finance Agreement states that it is "governed by the law of the Insured's address shown on page one of this Agreement." The insured Debtor's listed address is "1 ASC Center, Southgate, MI 48195." Docket # 17, Exhibits 1-2.

7

Mich. Comp. Laws § 440.9104(g); *see also In re Duke Roofing*, 47 B.R. at 991-92.[10] Where Article 9 does not apply, of course, courts examine other relevant state law. *Id*. at 992.

As noted above, Debtor's argument, that Cananwill's security interest never attached before Debtor filed bankruptcy, is based on the *Duke Roofing* case. *Duke Roofing* did not involve a premium financing agreement. Instead, it addressed the rights of a lender under a blanket, all-assets type security agreement executed to secure a business loan. The district court, applying Michigan law, noted that Article 9 of Michigan's Uniform Commercial Code did not apply to a purported security interest in unearned insurance premiums, and that no other Michigan statute applied. So the court looked to "the common law of Michigan." *Id.* at 991, 992. The court held that the debtor's right to a refund of unearned insurance premiums, in which the bank claimed to have a security interest, "can only be described as a 'general intangible,'" and more specifically, as a "'future intangible' since the debtor had no right to such a refund at the time [the bank] was purportedly assigned an interest in such refunds." *Id*. at 992. The court held that under Michigan common law, the bank's purported security interest in this "future intangible" did not attach or become perfected before the debtor actually cancelled its insurance policy and thereby became entitled to a refund of unearned insurance premiums. *Id.* at 992, 993.

---

[10] *Duke Roofing* applied Michigan law. Courts in other jurisdictions have held uniformly that Article 9 of the U.C.C. does not apply to a security interest in unearned premiums. *See In re RBS, Inc.*, 67 B.R. at 949 (applying New York law); *Premium Financing Specialists, Inc. v. Lindsey*, 11 B.R. 135, 138 (E.D. Ark. 1981) (applying Arkansas law); *In re Air Vermont*, 40 B.R. 335, 337 (Bankr. D. Vt. 1984) (applying Massachusetts law); *Drabkin v. A.I. Credit Corp.* (*In re Auto-Train Corp.*), 9 B.R. 159, 164-65 (Bankr. D. D.C. 1981) (applying District of Columbia law); *Thico Plan, Inc. v. Maplewood Poultry Co.* (*In re Maplewood Poultry Co.*), 2 B.R. 550, 554 (Bankr. D. Me. 1980) (applying New Jersey law); *Nicola v. Northfield Ins. Co.* (*In re Redfeather Fast Freight, Inc.*), 1 B.R. 446, 450 (Bankr. D. Neb. 1979) (applying Nebraska and New York law); *TIFCO, Inc. v. U.S. Repeating Arms Co.* (*In re U.S. Repeating Arms Co.*), 67 B.R. 990, 996 (Bankr. D. Conn. 1986) (applying Maryland law).

In distinguishing contrary cases from other jurisdictions, the court in *Duke Roofing* noted that those cases involved a premium financing agreement. The court stated, without explanation, that "[w]ere this case to involve a premium financing agreement . . . the result might be different." *Id.* at 994. The court also noted that "[p]remium financing agreements are common commercial transactions" and the "court would hesitate to invalidate, for the sake of a pure legal sophism, a commonly accepted commercial transaction knowingly entered into by the parties." *Id.*

**2. Michigan's insurance premium financing statute**

Unlike *Duke Roofing*, this case does involve premium financing agreements. And there is a Michigan statute that governs premium financing agreements, Mich. Comp. Laws §§ 500.1501 - 500.1514. That statute, rather than Michigan common law, applies.

Under the statute, the parties to a premium financing agreement must put the terms of the agreement in writing, and the written agreement must contain certain provisions. *See* Mich. Comp. Laws § 500.1508. Debtor does not claim that any of these requirements have not been met in this case.

Among other things, the statute gives the premium financing company the right to receive any unearned premiums directly from the insurance company, and to apply them to the insured's debt owing to the financing company. Then, and only then, the premium financing company must pay any *excess* that remains to the insured. The statute provides:

> (5) Whenever a financed contract is canceled, **the insurer shall return whatever gross unearned premiums are due** under the insurance contract **to the premium finance company for the account of the insured**.

9

> (6) If the crediting of return premiums to the account of the insured results in a surplus over the amount due from the insured, ***the premium finance company shall refund the excess to the insured***, but no refund shall be required if it amounts to less than $1.00.

Mich. Comp. Laws § 500.1511(5)-(6)(emphasis added).

The statute characterizes the premium finance agreement as a "secured transaction," and states that the agreement need not be filed in order to be valid and "perfected":

> No filing of the premium finance agreement shall be necessary to perfect the validity of such agreement as a secured transaction as against creditors, subsequent purchasers, pledges, encumbrances, successors or assigns.

Mich. Comp. Laws § 500.1512.

Assuming that *Duke Roofing* was correct in its view of Michigan's non-U.C.C., common law, the Michigan statute on premium financing agreements changes that common law. It bestows validity and perfection on Cananwill's security interest in the Debtor's right to receive a refund of unearned premiums. Under this statute, the security interest attached was perfected when Cananwill made the Premium Finance Agreements with Debtor and then funded the loans enabling the Debtor to purchase its annual insurance policies. Tracking the words of § 500.1512, the security interest granted by the Debtor under each Premium Finance Agreement is "valid" and "perfected" as "a secured transaction as against creditors, subsequent purchasers, pledges, encumbrances, successors or assigns," without the need to file the Premium Finance Agreement or take any other action. And § 500.1511 *requires* the insurance company to pay "whatever gross unearned premiums are due under the insurance contract" to Cananwill, to enable Cananwill to recover any amounts due from the Debtor, before Cannanwill must pay over any "surplus" or "excess" to the Debtor.

10

This case is distinguishable from *Duke Roofing*, because Michigan's premium financing statute applies only to "premium finance companies," like Cananwill, and to "premium finance agreements" made by such companies. These statutes do not apply to a general secured lender like the bank in *Duke Roofing*. Mich. Comp. Laws § 500.1501 says that these statutes "shall not apply with respect to: . . . [a] bank, industrial bank, trust company, safe and collateral deposit company, small loan company, credit union, building and loan association, finance company, or cooperative savings association[.]" Rather, the statutes apply only to a "premium finance company," which is defined to mean "a person engaged in the business of entering into insurance premium finance agreements." *See* Mich. Comp. Laws §§ 500.1502(a) and (b).

**3. Cases from other jurisdictions**

The result in this case is consistent with the case law from other jurisdictions involving premium financing agreements. Those cases have held that a security interest in unearned premiums attaches and is perfected upon the funding of the policy, not upon a later cancellation of the policy. *See In re Universal Motor Express, Inc.*, 72 B.R. 208, 210 (Bankr. W.D. N.C. 1987) (applying North Carolina law); *In re RBS Industries, Inc.*, 67 B.R. at 949 (applying New York law); *In re U.S. Repeating Arms Co.*, 67 B.R. at 998 (applying Maryland law); *In re Air Vermont, Inc.*, 40 B.R. at 337 (applying Massachusetts law); *Premium Financing Specialists, Inc. v. Lindsey*, 11 B.R. at 138 (applying Arkansas law); *In re Maplewood Poultry Co.*, 2 B.R. 550 (applying New Jersey law); *In re Redfeather Fast Freight Inc.*, 1 B.R. at 450-51 (applying Nebraska and New York); *Feinstein v. AFCO Credit Corp.* (*In re Krimbel Trucking Co.)*, 3 B.R. 4 (Bankr. W.D. Wash. 1979) (applying Washington law).

11

While there is no Sixth Circuit case on point, the bankruptcy court's reasoning in *In re RBS Industries*, is instructive. *In re RBS Industries*, 67 B.R. 946. The creditor in *RBS* financed the debtor's insurance policies and obtained agreements giving it a security interest in unearned premiums. The debtor was required under the finance agreement to make regular installment payments to the financing company. After filing bankruptcy, the debtor in *RBS* argued that the financing company did not have a pre-petition property right in unearned premiums because the policies had not yet been cancelled.

In rejecting that argument, the court held that a security interest was created when the premium finance company made full payment of the insurance premiums, and in return, was granted the right to any unearned premiums following a default by the insured. *Id.* The *RBS* court also noted that "[a]t the first moment the policy takes effect, the entire premium is unearned. On each date thereafter the unearned portion of the premiums is reduced and the earned portion is proportionately increased, so that on any given date the unearned premium may be computed." *Id.* at 951 *(citing In re Auto-Train Corp.*, 9 B.R. at 159).

Relying on the language of the finance agreement, the *RBS* court determined that the parties clearly intended to grant the premium financing company a security interest in the unearned premiums, despite the fact that the financing company, as the debtor's assignee, did not have the right to receive the unearned premiums until the debtor's default. As such, the financing company "did have an existing property right, subject to that contingency, to which a security interest could and did attach." *Id.* (citation omitted). In addition, the cancellation of the insurance policies did not create the collateral; rather, the financing companies' status under the financing agreements as "'attorney-in-fact with full authority to, *inter alia*, cancel the

12

policies . . . ; was merely the procedural device intended by the parties to provide the insurance premium financier with recourse to the collateral securing the loan." *Id*. (citation omitted).

Finally, the *RBS* court recognized that "unearned premiums do not exist in a conceptual vacuum, they are a specific fund, subject to precise calculation, with which the parties intended to secure" the debtor's obligations to the financing company under the finance agreement. *Id.* The court went on to stress that it would "not employ the Bankruptcy Code to interfere with pre-petition intent of the parties by characterizing unearned premiums as a mere promise so that they have no viability until cancellation of the insurance policy under which they are owed." *Id.* To hold in favor of the debtor would "chill this common financing mechanism and diminish the ability of financially troubled companies to obtain insurance." *Id.*

## V. Conclusion

For the reasons stated in this opinion, the Court finds and concludes that (1) Cananwill had a perfected, pre-petition security interest in the Debtor's right to a refund of any unearned premiums paid for the Debtor's insurance policies; (2) Cananwill's security interest attached and was perfected when it made the Premium Finance Agreements with Debtor and funded the premium loans for Debtor's insurance policies; and (3) all of these events occurred, in this case, before the start of the 90-day preference period under 11 U.S.C. § 547(b)(4)(A).

The Court will conduct further proceedings on the remaining issues in this preference case in light of this opinion.

**Signed on March 13, 2009**       /s/ Thomas J. Tucker
                                                  **Thomas J. Tucker**
                                                  **United States Bankruptcy Judge**